

IN THE
TENTH COURT OF APPEALS

No. 10-12-00281-CR

ADRIAN BRONCHA ALEXANDER,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 19th District Court
McLennan County, Texas
Trial Court No. 2011-2176-C1

MEMORANDUM OPINION

In four issues, appellant, Adrian Broncha Alexander, challenges the trial court's denial of his motion to suppress. We affirm.

## I.   BACKGROUND

Here, appellant was charged by indictment with unlawful possession of a controlled substance, cocaine, in an amount less than one gram in a drug-free zone, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2010); *see also id.* § 481.134 (West Supp. 2013). Prior to trial, appellant filed a motion to suppress

all evidence obtained as a result of his seizure and arrest. In particular, appellant complained that the search of his person was conducted without a warrant, reasonable suspicion, probable cause, or consent and, thus, was a violation of the law. Accordingly, appellant sought to exclude physical evidence seized from his person— namely, a plastic baggie containing a couple of off-white rocks, which were later described as cocaine and were found in appellant's pocket.

After a hearing, the trial court denied appellant's motion to suppress. Thereafter, appellant entered an open plea of guilty to the charged offense and pleaded "true" to an enhancement paragraph contained in the indictment, which referenced appellant's prior conviction for delinquent conduct constituting the felony offense of harassment by a person in a correctional facility. The trial court sentenced appellant to five years' confinement in the Institutional Division of the Texas Department of Criminal Justice and assessed $140 in restitution. Thereafter, the trial court certified appellant's right of appeal, and this appeal followed.

## II. MOTION TO SUPPRESS

In his four issues, all of which attack the trial court's denial of his motion to suppress, appellant argues the following: (1) the trial court erred in legally concluding that the facts warranted the conversion of a consensual encounter into a *Terry* stop and detention; (2) the trial court erred in concluding that officers had probable cause to execute a warrantless search and seizure of appellant; (3) the trial court erred in concluding that the record contained sufficient facts to corroborate "a controverted

'anonymous tip'"; and (4) if reasonable suspicion existed, the permissible scope of the *Terry* stop was exceeded. We disagree.

## A.    Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *see Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on: (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Johnson*, 68 S.W.3d at 652-53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *Kelly v. State*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the

light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling de novo, unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 819.

**B.     The "Anonymous Tip"**

When a police officer stops a defendant without a warrant, as was the case here, the State has the burden of proving the reasonableness of the stop. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). An officer is justified in detaining a person for investigative purposes if the officer has a reasonable suspicion of criminal activity, even if the officer lacks probable cause. *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005); *Woods*, 956 S.W.2d at 38. In determining what constitutes reasonable suspicion, "[w]e look only at those facts known to the officer at the inception of the stop—a stop or search unlawful at its inception may not be validated by what it turns up." *State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref'd).

The factual basis for an investigative stop need not arise from the officer's personal observation, but may be supplied by information from another person. *See Brother*, 166 S.W.3d at 257. However, a tip by an unnamed informant of undisclosed

reliability will rarely establish reasonable suspicion for an investigatory stop. *Alabama v. White*, 496 U.S. 325, 327, 110 S. Ct. 2412, 2414-15, 110 L. Ed. 2d 301 (1990); *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).

When a tip is made by phone and the caller's identity is unknown, there must be some corroboration so that the police officer may reasonably conclude the tip is reliable and therefore detention is justified. *See White*, 496 U.S. at 329, 110 S. Ct. at 2415-16. This requires that the officer must corroborate details that indicate criminal activity. *See id.*; *see also Stewart v. State*, 22 S.W.3d 646, 648 (Tex. App.—Austin 2000, pet. ref'd). Descriptions of a subject's observable appearance or location may help an officer identify the person being accused, but do not corroborate the tipster's knowledge of criminal activity. *See Florida v. J.L.*, 529 U.S. 266, 272, 120 S. Ct. 1375, 1379-80, 146 L. Ed. 2d 254 (2000).

We consider the following factors when determining the degree to which a citizen-informant's tip may be found to be sufficiently reliable: (1) whether a detailed description of the wrongdoing was provided by the informant; (2) whether the wrongdoing was observed firsthand by the informant; (3) whether the informant was somehow connected with the police (i.e., a paid informant); and (4) whether the informant placed himself in a position to be held accountable for the report. *See Mitchell v. State*, 187 S.W.3d 113, 117 (Tex. App.—Waco 2006, pet. ref'd).

The testimony adduced at the hearing indicated that a Waco Police Department dispatcher received a call from a citizen-informant at around 10:50 a.m. on July 2, 2011, about an assault in progress. The informant stated that a "male subject [was] beating on

a female subject near a dumpster close to 11th and Dutton Street." As reflected in the trial court's findings of fact, Waco Police Officer Rickey Revis was dispatched to the intersection of 11th Street and Dutton in Waco, Texas. Upon arriving at the location, Officer Revis observed an African-American male, later identified as appellant, and an African-American female wearing the same clothes that were described by the informant. Officer Revis subsequently made contact with the two individuals.

While talking to the individuals, Officer Revis noticed that the female's "hair was messed up, she had dirt and what appeared to be grass in her hair and also down her back side." Officer Revis's observations of appellant and the female corresponded with the information that was provided by the informant. When Officer Revis explained to the individuals why he was stopping them, "they both said that they were horseplaying."[1] *See Navarette v. California*, No. 12-9490, 2014 U.S. LEXIS 2930, at *17 (Apr. 22, 2014) ("But we have consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.'" (quoting *United States v. Arvizu*, 534 U.S. 266, 277, 122 S. Ct. 744, 753, 151 L. Ed. 2d 740 (2002))). Officer Revis did not believe that story.

Nevertheless, the evidence adduced at the hearing on appellant's motion to suppress provides sufficient indicia of reliability of the informant's report. *See id.* Here, the informant provided a detailed description of the assault and the two participants, including their location and clothing. This information was corroborated by Officer

---

[1] In its findings of fact, the trial court noted that the female participant declined to press charges against appellant for assault.

Revis's observations at the scene of the incident. *See Pipkin v. State*, 114 S.W.3d 649, 654 (Tex. App.—Fort Worth 2003, no pet.) ("'Corroboration' in this sense does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is justified."). Indeed, the female participant had grass, leaves, and dirt in her hair and on her back side and appeared as if she had just been in an altercation. *See Bilyeu v. State*, 136 S.W.3d 691, 696 (Tex. App.—Texarkana 2004, no pet.) ("The officer must corroborate facts that would lead him or her to reasonably suspect that 'some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime." (internal citation omitted)). Moreover, the record reflects that the informant personally observed the assault take place. *See Navarette*, 2014 U.S. LEXIS 2930, at *10 ("'[An informant's] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.'" (quoting *Illinois v. Gates*, 462 U.S. 213, 234, 103 S. Ct. 2317, 2330, 76 L. Ed. 2d 527 (1983))). The record reflects no connection between the informant and the police. And finally, on re-direct, Officer Revis testified that the officers had the phone number for the informant and that Officer

Ben Rush contacted the informant and confirmed what had been seen. This information placed the informant in a position to be identified and held accountable for the report.[2]

In light of the heightened indicia of reliability arising from the circumstances of the informant's report, Officer Revis's observations under the totality of the circumstances were sufficient to corroborate the report and provide reasonable suspicion to stop and detain appellant and the female participant of the assault for further investigation. *See White*, 496 U.S. at 329, 110 S. Ct. at 2415-16; *Mitchell*, 187 S.W.3d at 117; *Stewart*, 22 S.W.3d at 648.

## C. The *Terry* Stop and Frisk

On appeal, appellant also complains that the officer exceeded the scope of *Terry* by skipping the frisk and "searching and seizing appellant without even bothering to question him further." In addition, appellant argues that the "second officer further compounds these errors in judgment by mistakenly and incorrectly believing appellant

---

[2] Additionally, in *Navarette v. California*, the United States Supreme Court recognized that:

> Another indicator of veracity is the caller's use of the 911 emergency system. A 911 call has some features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity. As this case illustrates, 911 calls can be recorded, which provides victims with an opportunity to identify the false tipster's voice and subject him to prosecution. . . . The 911 system also permits law enforcement to verify important information about the caller. In 1998, the Federal Communications Commission (FCC) began to require cellular carriers to relay the caller's phone number to 911 dispatchers. Beginning in 2001, carriers have been required to identify the caller's geographic location with increasing specificity. And although callers may ordinarily block call recipients from obtaining their identifying information, FCC regulations exempt 911 calls from that privilege. None of this is to suggest that tips in 911 calls are per se reliable. Given the foregoing technological and regulatory developments, however, a reasonable officer could conclude that a false tipster would think twice before using such a system. The caller's use of the 911 system is therefore one of the relevant circumstances that, taken together, justified the officer's reliance on the information reports in the 911 call.

No. 12-9490, 2014 U.S. LEXIS 2930, at **12-14 (Apr. 22, 2014) (internal citations omitted).

is already under arrest for the anonymous tipster's claimed assault, then marches on and fully searches appellant; also without questioning either individual."

In its findings of fact, the trial court stated the following:

11. Officer Revis, knowing an act of violence (the alleged assault) may have occurred, grabbed the Defendant's hand out of concern he could have been reaching for a weapon;

12. The Defendant was handcuffed for officer safety;

. . . .

14. Continuing the protective search for weapons, Officer Brewer reached into the Defendant's left front pocket and pulled out a cell phone.

Moreover, in its conclusions of law, the trial court noted that:

1. The officers had reasonable and valid belief that a crime of violence had occurred, and had a right to pursue their investigation without fearing for their safety;

2. The search for a weapon was further justified because of the Defendant's sudden movement for a pocket that could have concealed a weapon;

3. The officers were not searching for contraband, but were only attempting to insure [sic] their safety;

4. In removing the cellphone to facilitate and complete the search for a weapon, the contraband was inadvertently discovered when it fell from the Defendant's pocket;

5. Once the contraband was discovered the Officers had probable cause to further detain and arrest the Defendant.

With regard to the *Terry* stop and frisk, the Court of Criminal Appeals has opined that:

Law enforcement personnel may conduct a limited search for weapons of a suspect's outer clothing, even in the absence of probable cause, where an

officer reasonably believes that the suspect is armed and dangerous to the officer or others in the area.[3]  The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.  Such a weapons frisk will be justified only where the officer can point to specific and articulable facts which reasonably led him to conclude that the suspect might possess a weapon.  The officer need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent person would justifiably believe that he or others were in danger.  The timing of a protective search is not dispositive in evaluating its reasonableness.

> . . . .

Appellant argues further that by reaching into his pocket and recovering the bullet during the second pat-down, Hardin exceeded the scope of his authority under *Terry*.  It is true that the scope of a protective *Terry* frisk is a narrow one.  When a protective search is warranted, the search must be carefully limited to that which is necessary to discover weapons that could reasonably harm the police officers or others.

In this case, when Hardin patted down the outside of appellant's front pants pocket, he felt what he thought was a weapon.  In order to ascertain whether the object was in fact a weapon, Hardin reached into appellant's pocket.  That in the course of doing so Hardin discovered an object immediately recognized by touch as a bullet does not render the search unreasonable.  Hardin's search did not exceed the scope of that which was necessary to determine whether appellant was armed.  Therefore, the search was valid and the trial court properly denied appellant's motion to suppress the fruits of the search.

*Balentine v. State*, 71 S.W.3d 763, 769-70 (Tex. Crim. App. 2002) (internal citations & quotations omitted).

---

[3] *See Terry v. Ohio*, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 1884-85, 20 L. Ed. 2d 889 (1968) (holding "that where a police officer observes unusual conduct that leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him" and that such "a search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken").

Here, the record reflects that, because he did not believe that appellant and the female were being truthful, Officer Revis asked if appellant and the female had identification on their person. Appellant immediately put his right hand in his right pocket. Out of concern that appellant could be reaching for a weapon, Officer Revis grabbed appellant's hand. At this time, other law-enforcement officers, including Officer Jason Brewer, arrived. The officers subsequently handcuffed appellant for officer safety and, as stated in the trial court's findings of fact, commenced a protective search for weapons. *See id.* at 771.[4] Officer Revis searched appellant's right pocket,

---

[4] Specifically, the *Balentine* Court noted that:

*Terry* provides that a police officer may stop and briefly detain a person reasonably suspected of criminal activity in the absence of probable cause to arrest the person. The officer may use force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety. There is no bright-line test providing that mere handcuffing is always the equivalent of an arrest. Instead, when evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.

We conclude that the investigative detention in this case did not evolve into an arrest. To the extent appellant was restrained, the restraint did not exceed the scope of a *Terry* stop and frisk. Hardin escorted appellant to his patrol car to question him further about his being out and to investigate if he may have been involved in the shots being fired in the area in some way, shape, or form. He handcuffed appellant because he feared for his own safety. These safety concerns were reasonable, given the circumstances: it was early in the morning, Hardin had encountered appellant in an area where gunfire had been reported; appellant exhibited suspicious behavior and lied in response to Hardin's questions; and Hardin was alone in the patrol car with appellant without a bulletproof partition between the front and back seats. The investigative detention did not evolve into an arrest simply because appellant was escorted to the patrol car and handcuffed. Hardin did only that which was reasonably necessary to ensure his own safety while investigating appellant's possible involvement in the gunfire.

71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (internal citations & quotations omitted).

And more recently, in *Baldwin*, the Court of Criminal Appeals stated that:

The reasonableness of the use of handcuffs depends, in particular, on whether handcuffs are reasonably necessary to allow the officer to pursue his investigation without fear of

while Officer Brewer searched appellant's left pocket. Officer Brewer recounted that he patted appellant's person and felt a bulge in appellant's left pocket. Officer Revis obtained appellant's identification from the right pocket, and Officer Brewer pulled out appellant's cell phone from appellant's left pocket. However, when Officer Brewer pulled the cell phone out of appellant's left pocket, a plastic baggy containing two off-white rocks fell out of appellant's pocket. The trial court's findings of fact stated that, based on the officers' training and experience and a field test, the items contained in the baggy were identified as crack cocaine. Appellant does not dispute this finding of fact.

Because appellant was suspected to have committed the violent offense of assault, and because he made a furtive gesture by reaching in his pants pocket when asked if he had identification, we cannot conclude that the officers acted unreasonably in conducting a protective search for weapons. *See id.* at 770. Furthermore, the record reflects that Officer Brewer testified that he felt a bulge in appellant's left front pocket that he believed could be a weapon. To ascertain whether the object was, in fact, a weapon, Officer Brewer reached into appellant's left front pocket. That in the course of doing so Officer Brewer discovered that an object was immediately recognized as a cellphone does not render the search unreasonable. *See id.* (citing *Worthey v. State*, 805 S.W.2d 435, 439 (Tex. Crim. App. 1991) (concluding that the search of the interior of appellant's purse was reasonable where appellant was hiding the purse from officers

violence. On the other hand, the use of handcuffs may escalate a citizen encounter or investigative detention into an arrest if there is no evidence that the suspect is dangerous or poses a flight risk.

278 S.W.3d 367, 374 (Tex. Crim. App. 2009) (internal footnotes & quotations omitted).

and merely touching the purse's exterior was not sufficient to determine whether appellant was carrying a weapon)). Accordingly, we cannot conclude that the scope of the officers' search exceeded that which was necessary to determine whether appellant was armed. *See id.* at 770. And as such, we hold that the search was valid, and the trial court properly denied appellant's motion to suppress the fruits of the search. *See id.*; *Minnesota v. Dickerson*, 508 U.S. 366, 374-75, 113 S. Ct. 2130, 2136-37, 124 L. Ed. 2d 334 (1993) (concluding that police may seize non-weapons contraband detected during a protective "pat-down" search for weapons under *Terry* when the contraband's "contour or mass makes its identity immediately apparent"); *Griffin v. State*, 215 S.W.3d 403, 410 (Tex. Crim. App. 2006). In other words, viewing the evidence in the light most favorable to the trial court's ruling, we cannot conclude that the trial court abused its discretion in denying appellant's motion to suppress. *See Amador*, 221 S.W.3d at 673; *see also Wiede*, 214 S.W.3d at 24; *Kelly v. State*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). Accordingly, we overrule all of appellant's issues on appeal.

## III. CONCLUSION

We affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed May 29, 2014
Do not publish
[CR25]